U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

JAN 2 3 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CHARLES FRANKLIN KITTS, ET AL | : | DOCKET NO. 2:07-CV-1151 |
| VERSUS | : | JUDGE MINALDI |
| CITGO PETROLEUM CORP. | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the Court is a Motion to Remand [Doc. 65] filed by the plaintiffs on January 16, 2009. Also before the Court is a Motion for Continuance of the trial currently scheduled for January 26, 2009, the Monday following the Friday on which this ruling is issued [Doc. 66]. For reasons set forth below, both motions are DENIED.

### PROCEDURAL HISTORY

On June 15, 2007, plaintiffs filed suit in the 14th Judicial District Court in and for the Parish of Calcasieu, State of Louisiana, claiming damages resulting from an oil spill alleged to have occurred on June 19, 2006, from a facility owned and operated by defendant. [Doc. 1, Att. 1]. Plaintiffs' complaint alleges they suffered injuries from this spill that could be described in the following non-exclusive particulars:

(1) Respiratory problems and illnesses, sinus damage, difficulty breathing, burning of the throat and nasal passages;
(2) Nausea and vomiting;
(3) Dizziness, headaches, and burning of the eyes;
(4) Increased risk of contracting cancer or other life threatening illness, fear of cancer inasmuch as some of the chemicals are suspected carcinogens which cause damage to DNA and/or chromosomes;
(5) Burning stomach and other gastrointestinal problems;
(6) Emotional and psychological dysfunction;

(7) Weakness and fatigue; and
(8) Fear of Future health problems.

Doc. 1, Att. 1, p. 9, ¶ 28. From the aforementioned injuries, plaintiffs claim to have suffered the following non-exclusive damages:

(1) Past, present, and future physical pain and suffering;
(2) Past, present, and future mental anguish and anxiety;
(3) Temporary disability and loss of enjoyment of life;
(4) Past, present, and future hospital, doctor, prescription drug, physical therapy, and other related medical expenses;
(5) Past lost wages;
(6) Future lost wages and earning capacity; and
(7) Fear of cancer and other significant health problems.

Doc. 1, Att. 1, p. 9, ¶ 29.

Plaintiffs also alleged in their original complaint that they were representative of a class of persons similarly situated. "Although the exact number and identity of the class is unknown at this time, upon information and belief, the class clearly consists of hundreds, if not thousands of persons adversely affected." Doc. 1, Att. 1, p. 9, ¶ 10.

Defendant filed a Notice of Removal with this court on July 11, 2007. Doc. 1. Defendant alleged this court had subject matter jurisdiction over the underlying complaint based upon diversity of citizenship and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332.[1] No Motion to Remand was filed by plaintiffs until the motion currently under consideration filed January 16, 2009, eighteen months following removal.

Plaintiffs allege in their Motion to Remand that remand to state court is appropriate because this court has denied their request to certify this matter as a class action "thus divesting this Court of subject matter jurisdiction pursuant to the Class Action Fairness Act." Doc. 65, p.

---

[1] In its Notice of Removal, defendant also lists federal question jurisdiction as a basis for removal, particularly the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et. seq.* Defendant does not rely on federal question jurisdiction in its opposition to plaintiffs' Motion to Remand; accordingly, we do not discuss whether federal question jurisdiction exists.

2

1. Further plaintiffs allege that none of the plaintiffs' claims exceed the requisite jurisdictional amount of $75,000, "thus depriving this court of subject matter jurisdiction."[2] Defendant maintains that both CAFA and general diversity jurisdiction existed at the time of removal of the original complaint, that the original complaint was properly removed, and that nothing that has occurred since the time of removal could serve to divest this court of jurisdiction.

## LAW AND ANALYSIS

Plaintiffs maintain in the memorandum in support of their motion that events occurring since the initial removal of this matter mandate remand. Specifically, and after referencing the limited nature of this court's subject matter jurisdiction, plaintiffs suggest that this court has a continuing duty to scrutinize its jurisdiction. Doc. 65, Att. 1, p. 4. Plaintiffs suggest that the "plain meaning" of 28 U.S.C. § 1447(c)[3] "dictates remand if jurisdictional defects arise after removal." *Id.*

In support of their proposition plaintiffs cite *Powerex Corp v. Reliant Energy Servs., Inc.*, 127 S.Ct. 2411 (2007). In relying on this most recondite opinion of the Supreme Court, plaintiffs are attempting to suggest that language from the opinion somehow provides a mandate for this court to remand pursuant to § 1447(c) if some event occurs after removal that negates the original basis of removal. This court does not find that *Powerex* does any such thing.

The sole issue before the Court in *Powerex* was whether the appellate court had jurisdiction to consider rulings made by the trial court prior to its order of remand. The Supreme Court in *Powerex* ruled that the appellate court had no such jurisdiction. The Court vacated the

---

[2] Plaintiffs also claim it does not appear from the face of plaintiffs' complaint that a federal question exists. For reasons set forth in footnote 1, we do not consider the federal question issue.
[3] 28 U.S.C § 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

3

judgment of the Ninth Circuit Court of Appeal[4] and remanded the case with instructions to dismiss the appeal for want of jurisdiction. *Id.* at 2421. The specific holding in *Powerex* was succinctly stated: "We hold that § 1447(d) bars appellate consideration of petitioner's claim that it is a foreign state for purposes of the FSIA." *Id.* *Powerex* stands for no more, and no less, than what it says.

Nevertheless plaintiffs maintain that the Supreme Court's recognition that "a case can be properly removed and yet suffer from a failing in *subject matter* jurisdiction that requires remand," 127 S.Ct. 2417, cited by plaintiff at Doc. 65, Att. 1, p. 5, is tantamount to a mandate that a trial court do so when post-removal activity would tend to negate the original basis for removal. Plaintiffs are removing this language from the context in which it is stated and rendering this esoteric area of federal jurisprudence even more confounding.

The Supreme Court did acknowledge that under 28 U.S.C. § 1441(e), Congress created a situation where a post-removal activity would mandate remand, that being where a plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction. Pursuant to § 1441(e), a court "may deny joinder, or permit joinder and remand the action to the State

---

[4] Specifically the Ninth Circuit held that it had jurisdiction to review substantive issues of law that preceded the remand order, citing *California v. NRG Energy Inc.,* 391 F.3d 1011, 1022-1023 (9th Cir. 2004). The substantive issues considered by the Ninth Circuit were pre-remand rulings of the trial court that certain entities named in the underlying action were protected from suit in state court by sovereign immunity and that another entity, Powerex (which was petitioner in the matter before the Supreme Court) did not qualify as a "foreign state" as defined by 28 U.S.C. § 1603 (the Foreign Sovereign Immunities Act of 1976, or "FSIA"). The trial court had found three entities did enjoy sovereign immunity but refused to dismiss those entities from the litigation before ordering remand. The trial court also concluded that Powerex did not qualify as a "foreign state." The Ninth Circuit, believing it was empowered to review those pre-remand issues, affirmed the trial court's conclusion with respect to sovereign immunity but found the court had erred in refusing to dismiss those entities prior to remand. The circuit court also affirmed the trial court's conclusion with respect to Powerex. Powerex sought certiorari before the Supreme Court on the lower courts' conclusion that it was not a "foreign state" but, for reasons set forth in the *Powerex* opinion, the Supreme Court refused to consider that issue as it found it, and the Ninth Circuit, had no jurisdiction to do so. The Court further concluded that, inasmuch as neither it nor the Ninth Circuit had authority to review the trial court's remand, Powerex's request for a reconsideration of the determination of its status "amounts to a request for one of two impermissible outcomes: an advisory opinion as to its FSIA status that will not affect any order of the District Court, or a reversal of the remand order." 127 S.Ct. at 2419. This the Court concluded it could not and would not do.

court." The purpose of this discussion, however, was simply to determine whether an order of remand issued in a case that was removed properly, as was the case in *Powerex*, **would be immune from appellate review** under § 1441(c) and the Court concluded that it would. Again, the Supreme Court's ruling in *Powerex* does nothing more or less than its clear holding states and that is that "§ 1447(d) bars appellate consideration of petitioner's claim that it is a foreign state for purposes of the FSIA." 127 S.Ct. at 2421.[5]

After launching the specter that *Powerex* does indeed mandate remand when post-removal activities affect the original basis for removal, plaintiffs then argue that remand is mandated here.

First, plaintiffs argue (without jurisprudential support) that this Court's denial of their Motion to Certify Class [Doc. 62] renders "CAFA jurisdiction . . . unavailable thus divesting this Court of subject matter jurisdiction." Doc. 65, Att. 1, p. 4. In response to this claim, defendant cites various district court cases (none from Louisiana) that hold to the contrary while acknowledging some cases are in line with plaintiffs' position. Doc. 69, Att. 1, pp. 9-12. This Court finds compelling the reasoning of those cases finding jurisdiction continues to exist even

---

[5] The Fifth Circuit has already indicated how narrow it finds the holding of *Powerex* to be. In *Brookshire Brothers Holding, Inc. v. Dayco Products, Inc.*, 2009 WL 22876 (5th Cir. 01/06/2009), the Fifth Circuit reversed a remand ordered by the trial court. In doing so, the Fifth Circuit acknowledged the holding of *Powerex*, finding its pronouncement to "cast some doubt on the proposition that a remand order based on declining supplemental jurisdiction under [28 U.S.C.] section 1367(c) [allowing district courts discretion to decline exercise of supplemental jurisdiction over state law claims that are related to claims made under Federal statute] does not fall within the class of remands described in section 1447(c)," *Id.* at *2 and thus would be immune from appellate review. The Fifth Circuit states: "Although the Supreme Court has indicated that it considers it an open question whether a discretionary remand under section 1367(c) is based on a lack of subject matter jurisdiction, and is thus unappealable under section 1447(d), it is not an open question in this circuit. *Powerex* . . . does not overrule or directly undermine the line of cases in this circuit holding that discretionary remands pursuant to section 1367(c) are appealable." *Id.* at *3. In *Brookshire Brothers*, the appellate court found that the trial court abused its discretion in remanding a case that was properly removed due to bankruptcy of a defendant after that defendant was dismissed through settlement. The Fifth Circuit detailed the proceedings that had occurred in the federal trial court over a three year period, generating more than 1300 entries in the docket. The trial court had decided forty-one dispositive motions, fourteen *Daubert* motions, and seven other motions *in limine*, discovery had closed, and the parties were making final preparations for trial. The court concluded: "considering the statutory factors set forth in section 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity as applied to this case, we find that the district court abused its discretion by declining supplemental jurisdiction over the remaining state law claims and remanding this suit to state court." *Id.* at *5.

after denial of the class action. Particularly appropriate is the conclusion reached by the Southern District of Florida in *Colomar v. Mercy Hospital, Inc.*, 2007 WL 2083562, *3 (S.D. Fla. 07/20/2007). In support of its denial of a Motion to Remand filed in a case properly removed under CAFA but after the minimally diverse defendant was dismissed and class certification was denied, the Florida district court stated:

> [T]he district courts considering the issue [of whether a federal court retains jurisdiction after class certification is denied] (there does not appear to be any direct circuit authority on point) have concluded that case developments subsequent to removal do not alter the courts' CAFA jurisdiction, if jurisdiction was proper at the time of removal. *See Davis v. Homecomings Financial*, No. C05-1466RSL, 2007 WL 905939 (D.Wash., Mar.22, 2007) (slip copy); *Moniz v. Bayer A.G.*, 447 F.Supp.2d 31, 36 (D.Mass.2006); *Robinson v. Holiday Universal*, No. 05-5726, 2006 WL 470592 (E.D.Pa., Feb.23, 2006); *Dinkel v. G.M.C.*, 400 F.Supp.2d 289, 294 (D.Me.2005). The decision in *Davis* is particularly apt here, given the timing of the instant motion to remand. In *Davis,* as here, the plaintiff moved for remand two years into the case and after defendant filed for summary judgment. The *Davis* court rejected plaintiff's attempt and, quoting from the Senate Report accompanying CAFA, explained:
>
>> Current law (that S.5 does not alter), is also clear that, once a complaint is properly removed to federal court, the federal court's jurisdiction cannot be ousted by later events.... If a federal court's jurisdiction could be ousted by events occurring after a case was removed, plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years) into the litigation to require remand to state court.... [I]f subsequent events could unravel a federal court's jurisdiction, a defendant could prevail on the merits, only to have the federal court conclude that it lacks jurisdiction to enter judgment.
>
> *Davis*, 2007 WL 905939, at *2 (quoting S. Rep. 109-14, 109th Cong., 1st Sess.2005, reprinted in 2005 U.S.C.CA.N. 3, *70-71, *66-67). Those concerns apply equally well in this case, which was properly removed from state court approximately two years ago. To litigate the case up to the eve of trial, and then to seek remand after adverse rulings have issued and summary judgment is briefed, equates to a forum shopping which the traditional rules of removal and remand are designed to preclude.

*Id.* at *3.

Plaintiffs admit in brief that this matter was properly removed under CAFA. Doc. 65, Att. 1, p. 4.[6] Plaintiffs now seek remand, eighteen months after removal, after the Court denied its Motion to Certify Class, and four working days before trial.[7] This Court finds plaintiffs' current efforts to unravel jurisdiction "equates to a forum shopping which the traditional rules of removal and remand are designed to preclude." *Id.*

Having found this Court retains jurisdiction under CAFA even after plaintiffs' Motion to Certify Class has been denied, there is no need to consider plaintiffs' second argument, which is that this Court lacks diversity jurisdiction because, subsequent to the removal of the state court petition, "the seven named plaintiffs have all testified via deposition concerning the events surrounding each of their respective claims." Doc. 65, Att. 1, p. 9. The Court does nevertheless address this argument and finds this argument also without merit.

Plaintiffs rely upon the Pre-Trial Statement of CITGO and CITGO's analysis of the deposition testimony of the seven named plaintiffs to suggest that these plaintiffs' claims do not all meet the jurisdictional amount threshold of $75,000. This Court does not find that defendant's *argument*, suggested in anticipation of trial and after post-removal discovery, affords plaintiffs purchase.

---

[6] "In fact, CAFA jurisdiction at the time of removal actually prevented the plaintiffs from challenging subject matter jurisdiction based upon traditional diversity of citizenship and federal question. Had the plaintiffs done so, any such motion to remand would have been denied because this Court had original jurisdiction pursuant to CAFA." *Id.*

[7] Plaintiffs filed this motion on Friday, January 16, 2009. Monday, January 19, 2009, was a federal holiday. Trial is scheduled for Monday, January 26, 2009. In the minutes of the pretrial conference held by the Magistrate Judge on December 16, 2008, (Doc. 54), it is clear that plaintiff contemplated filing a Motion to Remand if this court should dismiss its Motion for Class Certification, which it did on January 8, 2009. It bears noting also that this court's January 8, 2009, ruling was an adoption of the Report and Recommendation of the Magistrate Judge filed December 16, 2008, an R&R to which plaintiffs did not object until the last day upon which they were allowed to object, January 5, 2009, and that this court's conclusion on that issue should come as no great surprise given our refusal to hold a status conference on the class certification issue, finding that issue was not properly before the court. Doc. 25. Plaintiffs' identification of potential remand as an issue in mid-December, to be sparked by a ruling of the court that they did not ask the court to make until the last possible moment, calls this court to question the timing and plaintiffs' motives, a question perhaps answered by the Motion for Continuance filed contemporaneously with the Motion to Remand.

7

Defendant appropriately argues, with jurisprudential support, that it is the petition itself that controls whether this proceeding was appropriately removed on the grounds of general diversity and that it can meet its burden of establishing amount in controversy "by demonstrating that it is facially apparent from the Petition that the claims likely are above $75,000, or, where it is not facially apparent, by setting forth facts in controversy demonstrating that the amount in controversy exceeds $75,000." Doc. 69, Att. 1, p. 4. Nothing in plaintiffs' well-crafted argument successfully refutes this point.

Defendant correctly points out that plaintiffs' argument does not focus on what was alleged in the petition itself as it should and that this petition, rather than post-removal argument following post-removal discovery, is the focus of this inquiry. Additionally, defendant appropriately notes that its post-removal argument upon which plaintiffs rely to "prove" the amount in controversy does not exceed the appropriate amount in all cases focuses only upon what plaintiffs have described in their deposition testimony as that which they claim to have already suffered and does not appropriately focus on what they allege in their petition to have suffered, allegations that remain provable at trial, such as anticipatory pain, suffering, lost wages, fear of cancer, and the like. Doc. 69, Att. 1, pp. 4-6.

Absent from plaintiffs' argument on this point is any clear, definitive, and unambiguous statement that any one of their claims does not warrant an award of damages of $75,000 or more, the requisite jurisdictional amount. As another court in this district has already held for reasons with which this Court agrees, even if plaintiffs were to stipulate as much, that post-removal stipulation would not serve to deprive this Court of jurisdiction. *Griffin v. Georgia Gulf Lake Charles LLC*, 562 F. Supp.2d 775 (W.D. La. 2008). Once again plaintiffs merely float the specter, supposedly supported by defendant's pretrial argument (which is just that – argument,

not evidence) minimizing plaintiffs' damages, that jurisdictional amount is not met as we allegedly now know following post-removal discovery. This Court concludes that this is not the proper standard in this circuit.

For reasons set forth above, this Court does not find, as plaintiffs suggest, that post-removal discovery supports their claim that the requisite amount in controversy is lacking and neither does this Court find that post-removal discovery is the standard by which this issue is reviewed. Rather, the inquiry is limited to what is facially apparent from plaintiffs' original petition and the allegations of that petition clearly support a conclusion that damages sought by petitioners well exceed the requisite amount.

## CONCLUSION

IT IS ORDERED that the Motion to Remand [doc. 65] is hereby DENIED. Because the Motion for Continuance is based solely upon the pendency of the Motion to Remand, and considering the ruling on that motion, the Motion for Continuance [doc. 66] is also hereby DENIED.

Lake Charles, Louisiana, this 23 day of _____, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

9